In the Matter of the Estate of CONOVER T. SILVER, Deceased.

Surrogate's Court, Westchester County, May 15, 1929.

*Feiner & Skutch* [*Ira Skutch* of counsel], for the widow.

*Henry R. Barrett,* special guardian.

SLATER, S. The widow petitioned and the court has appointed her administratrix of the estate of the decedent, reserving the right to determine the validity of a certain separation agreement.

It appears from the evidence that the separation agreement dated January 19, 1928, entered into by the decedent and the petitioner herein was executed while the parties were living together as husband and wife. They continued to live together until the 15th of May, 1928. No separation had in fact taken place prior to May, 1928.

The facts are these:

The marital relation had continued for some fifteen years, as a result of which three children were born — two children survived. The home had been created and continued. The husband had fully provided for the family. He had grown well-to-do, leaving at his death something over $500,000. Another woman had entered into the picture, with the result that, prior to January 7, 1928, and on that date, the husband had written letters to the wife concerning the unpleasantness, wherein he suggested a settlement " in lieu of alimony and any and all other claims." The settlement came about in an agreement which was presented to the wife by the husband's attorney which agreement recites the past marital differences and that adequate provision shall be made for the maintenance and support of the wife and the custody and education of the children. The attorney testified that the agreement of separation was presented by him to the wife at the dining table in the Hotel McAlpin in New York city on the 19th of January, 1928. The wife was hysterical, she did not read the paper, but he told her what it contained. The attorney suggested the agreement be submitted to her attorney, and about that time the husband, the decedent, arrived upon the scene and said it was not necessary for the wife to have an attorney and insisted the agreement be signed by her *instanter.* Both husband and wife returned to the apartment and continued to keep house with the two children and maid as before.

By the 9th paragraph of the agreement the wife released and relinquished " all dower and inheritance in real or personal property of the husband."

Was the agreement of separation a valid one, so that the widow fails to take under the laws of intestacy any interest in the husband's estate?

A contract which binds one of the parties to do that which is contrary to the policy of the State is void. The perpetuation of the home is the keystone of society. The law does not favor contracts entered into by a husband and wife wherein they agree to separate and live apart in the future. The home is broken up and the first step is taken for the dissolution of the marriage relation. This agreement had for its object the future separation. It was entered into at a time when the decedent and the petitioner were living together, and the purpose of the contract was to achieve a future separation. It has no legal force or effect. It is against public policy and void. (Dom. Rel. Law, § 51; *Sunderlin* v. *Sunderlin*, 123 App. Div. 421; *Kaufman* v. *Kaufman*, 158 id. 892; *Dowie* v. *De Winter*, 203 id. 302; *Matter of Hughes*, 225 id. 29; *Galusha* v. *Galusha*, 116 N. Y. 635; *Winter* v. *Winter*, 191 id. 462; *Stewart* v. *Stewart*, 130 Misc. 59; *Cariola* v. *Cariola*, 131 id. 66.) If the parties had actually separated, the contract would not be deemed violative of public policy. (*Winter* v. *Winter*, *supra*.)

There are two cases holding that, if the separation follows immediately, the agreement can nevertheless be upheld. (*Fives* v. *Fives*, 122 Misc. 657; *Marks* v. *Marks*, 127 id. 416.)

These cases are not in point as evidence in the instant case clearly shows that the parties continued to keep the home as before, until the middle of May, 1928, when the actual separation took place.

Neither was the separation agreement accomplished in the best of good faith on the part of the husband and with a perfect understanding by the wife. It was not entered into freely, fairly, voluntarily and understandingly, and consequently, was the result of duress and coercion. (30 C. J. 1059.)

In my opinion, the provision for the support of the wife was inadequate and she accepted it by force. At the time of the execution of the separation agreement the husband was worth upwards of $500,000 with an annual income of $50,000. The agreement provided for the payment for the support of the wife of $500 per month. The husband did not discharge the legal obligation resting upon him by providing a fair amount for the support of his wife. (*Hungerford* v. *Hungerford*, 161 N. Y. 550; *Tirrell* v. *Tirrell*, 232 id. 224; *Ducas* v. *Guggenheimer*, 90 Misc. 191;

affd., 173 App. Div. 884.) The provision made was inadequate. (*Glusker* v. *Glusker*, 108 Misc. 287; *Pelz* v. *Pelz*, 156 App. Div. 765.)

The law in such cases requires good faith; here it was not present. To sustain such an agreement the law requires lack of coercion; here it was present and evident. The law exacts adequate provision for the wife; here the provision was disproportionate to the husband's means.

The agreement of separation is invalid and is set aside.

Submit decision and decree on notice to the special guardian.